**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| PALISADE TECHNOLOGIES, LLP, | |
| Plaintiff, | CIVIL ACTION NO. 2:26-cv-581 |
| v. | JURY TRIAL DEMANDED |
| TEAM GROUP, INC., | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

1.      Plaintiff Palisade Technologies, LLP ("Palisade" or "Plaintiff") files this Complaint against Defendant Team Group, Inc. ("Team Group" or "Defendant") and alleges as follows:

**NATURE OF THE ACTION**

2.      This is a civil action seeking damages and other relief arising out of Defendant's infringement of Plaintiff's United States Patent Nos. 8,055,846 ("'846 patent"); 8,327,051 ("'051 patent"); 9,281,314 ("'314 patent"); 9,524,974 ("'974 patent"); and 9,530,716 ("'716 patent") (collectively, the "Asserted Patents"). Palisade owns the entire right, title, and interest in and to each of the Asserted Patents, including the right to recover damages for past, present, and future infringement thereof.

3.      Defendant infringes each Asserted Patent. Without Palisade's authorization, Defendant makes, uses, offers to sell, sells within, and/or imports into the United States memory products that satisfy each element of the Asserted Patents, and/or uses, offers to sell, sells within, and/or imports into the United States memory products manufactured abroad by processes recited in the Asserted Patents without material change and which are not trivial and nonessential components of other products. As used herein, the term "Accused Products" refers collectively to

- 1 -

the '846 Accused Products, the '051 Accused Products, the '314 Accused Products, the '974 Accused Products, and the '716 Accused Products.

## THE PARTIES

4.      Plaintiff Palisade is a limited liability partnership organized and existing under the laws of Nevada, with its principal place of business in Gardnerville, Nevada.

5.      On information and belief, Defendant Team Group, Inc. is a corporation organized and existing under the laws of Taiwan, with its principal place of business in New Taipei City, Taiwan.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271 *et seq*. This Court has subject matter jurisdiction pursuant to at least 28 U.S.C. § 1331 (Federal Question); 28 U.S.C. § 1338(a) (Patent Infringement Actions).

7.      Venue is proper in this District pursuant to at least 28 U.S.C. § 1391(c)(3). On information and belief, Defendant is not resident in the United States.

8.      On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and the Texas Long Arm Statute, due at least to its substantial business in this State and District. Defendant has purposefully and voluntarily placed, and continues to place, its infringing memory products—including its high-performance solid-state drives (SSDs)—into the stream of commerce through established domestic and global distribution channels (including the Internet) with the knowledge, expectation, and intent that those products would be sold to, purchased by, and utilized by consumers and system integrators in the United States, the State of Texas, and specifically within this District.

9.      On information and belief, Defendant has committed and continues to commit acts of patent infringement in this State and District, directly or through intermediaries (including subsidiaries, distributors, affiliates, e-commerce partners, retailers, suppliers, system integrators, and customers). Such acts of infringement include making, using, offering to sell, selling, and/or distributing Accused Products within this State and District, and/or importing Accused Products into this State and District, and/or actively inducing others to commit acts of patent infringement within this State and District.

10.     On information and belief, Defendant designs, manufactures, packages, and markets non-volatile memory products. Defendant's product lineup ranges from memory modules and consumer, industrial, and enterprise solid-state drives (SSDs) to portable handheld storage devices, USB flash drives, and embedded memory solutions. These products are widely integrated and used within mobile devices, custom computing systems, laptops, gaming consoles, enterprise servers, and data center infrastructures throughout the United States, Texas, and this District.

11.     On information and belief, Defendant positions itself as a dominant global participant in the high-speed storage market. Defendant aggressively targets enthusiast, gaming, and professional consumers across the United States, marketing its advanced solid-state storage solutions and memory modules globally under its premier corporate and consumer brands, including the "TEAMGROUP," "T-FORCE," and "T-CREATE" labels.

12.     Defendant directly targets and actively solicits consumers in the United States, the State of Texas, and this District via an interactive English-language website (https://www.teamgroupinc.com/en/) accessible to users within this District. Through its web portal, Defendant provides comprehensive English-language product specifications, interactive compatibility validation tools, Technical Support portals, and Sales Support networks specifically

optimized to engage U.S. buyers and facilitate domestic procurement. Defendant further uses these channels to explicitly promote its specialized hardware configurations to U.S. customers, including its patented low-profile thermal management systems and high-speed multi-channel bus architectures.

13.    On information and belief, the Accused Products are continuously available to, offered to, and purchased by consumers and system integrators within the United States, the State of Texas, and this District through major domestic retail infrastructure and interactive online marketplaces. For example, Defendant's exemplary Accused Products—including the TEAMGROUP NV5000 M.2 PCIe 4.0 SSD and the T-FORCE GE PRO PCIe 5.0 SSD—are actively listed for sale on major e-commerce platforms, such as the Amazon.com U.S. storefront, which offer direct, seamless shipping to residential and commercial addresses within the State of Texas and this District. Publicly available independent third-party engineering evaluations, industry-standard hardware registries, and detailed component teardowns of these commercially distributed devices confirm that they incorporate the exact physical hardware, circuitry routing, and material characteristics detailed throughout this Complaint.

14.    Defendant has also repeatedly and purposely availed itself of the privileges, protections, and benefits of the laws of the United States and the State of Texas. In its regular financial disclosures and corporate reporting, Defendant actively monitors and manages its ongoing U.S. market legal liabilities, acknowledging and submitting to the jurisdictional oversight of United States federal district courts to resolve commercial and consumer protection disputes arising from its U.S. product distributions.

15.    In sum, this Court has specific and general personal jurisdiction over Defendant Team Group, Inc. because Defendant has sufficient minimum contacts with the United States, the

State of Texas, and this judicial District; maintains continuous, systematic, and targeted commercial networks within this District; has purposefully availed itself of the rights and benefits of Texas law; and derives substantial revenue from making, using, offering for sale, selling, importing, and/or distributing its infringing memory products directly to residents within the State of Texas and this District.

### MARKING AND NOTICE PROVISIONS

16.     Palisade has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable, and is entitled to collect pre- and post-filing damages for Defendant's infringements of the Asserted Patents. Palisade provided actual notice to Defendant of its infringement through the filing and service of this original complaint.

### COUNT I
### (Infringement of U.S. Patent No. 8,055,846)

17.     Plaintiff incorporates the preceding paragraphs herein by reference.

18.     The '846 patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office (USPTO) on November 8, 2011, after full and fair examination.

19.     A copy of the '846 patent is available from the USPTO at https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8055846 (last visited July 10, 2026).

20.     Defendant infringes at least claim 15 of the '846 patent by making, using, offering to sell, and selling in, and/or importing into the United States apparatuses for data storage, such as solid-state drives (SSD), comprising: an interface, which is operative to accept write commands belonging to a storage operation invoked by a host computer, such as PCIe (Peripheral Component Interconnect Express); a volatile cache memory, which is powered by external electrical power and is coupled to cache the write commands and to cache a current execution status of the storage

operation, such as a DRAM (Dynamic Random-Access Memory) cache; an auxiliary non-volatile memory, such as NAND (Not And) flash; and a processor, which is coupled, responsively to an interruption of the external electrical power during the storage operation, to back-up the cached write commands and the cached execution status in the auxiliary non-volatile memory and, upon resumption of the external electrical power, to recover the backed-up execution status of the storage operation, so as to resume the interrupted storage operation based on the recovered execution status, such as an SSD controller having power loss protection (the "'846 Accused Products").

21.    Defendant's T-FORCE GE PRO PCIe 5.0 SSD product is an exemplary '846 Accused Product.

22.    Claim 15 of the '846 patent recites an apparatus for data storage.

23.    On information and belief, and only to the extent that the preamble is limiting, Defendant's T-FORCE GE PRO PCIe 5.0 SSD product, shown below in a photograph supplied by Team Group, is an SSD product and therefore utilizes an integrated circuit assembly of non-volatile flash memory to store and retain data electronically requiring no moving parts.



(Source: https://www.teamgroupinc.com/en/product-detail/ssd/T-FORCE/ge-pro/ge-pro-TM8FFS001T0C129/ (last visited July 10, 2026)).

24.    Claim 15 of the '846 patent recites an interface, which is operative to accept write commands belonging to a storage operation invoked by a host computer.

25.    On information and belief, Defendant's T-FORCE GE PRO PCIe 5.0 SSD product includes a PCIe Gen5 x4 with NVMe (Non-Volatile Memory Express) interface. NVMe is a data transfer protocol for flash storage. The T-FORCE GE PRO PCIe 5.0 SSD product uses an M-Key layout for its interface. This interface is shown at right in the photograph reproduced above.

26.    Claim 15 of the '846 patent recites a volatile cache memory, which is powered by external electrical power and is coupled to cache the write commands and to cache a current execution status of the storage operation.

27.    On information and belief, Defendant's T-FORCE GE PRO PCIe 5.0 SSD product includes a DRAM cache, which is powered by a voltage-regulated signal supplied from an external source, such as a motherboard of a host computer. The DRAM cache acts as a staging buffer for write commands. It also functions as a live ledger that caches the execution status of every storage operation. Defendant explains that DRAM cache is a separate chip on the PCB (printed circuit board) of the SSD. Defendant further explains that the DRAM chip is responsible for temporarily storing some of the data to speed up processing. As shown in the chart below, supplied by Defendant, the T-FORCE GE PRO PCIe 5.0 SSD product includes a DRAM cache:

| MODEL ⇕ | CAPACITY ⇕ | SEQUENTIAL READ ⇕ | SEQUENTIAL WRITE ⇕ | TERABYTE WRITTEN ⇕ | DRAM CACHE ⇕ | TEAM P/N ⇕ | COMPARE ⇕ |
|---|---|---|---|---|---|---|---|
| GA PRO M.2 PCIe 5.0 SSD | 4TB | up to 10,000 MB/s | up to 8,500 MB/s | 2400TBW | YES | TM8FFJ004T0C129 | ADD |
| GA PRO M.2 PCIe 5.0 SSD | 2TB | up to 10,000 MB/s | up to 8,500 MB/s | 1200TBW | YES | TM8FFJ002T0C129 | ADD |
| GA PRO M.2 PCIe 5.0 SSD | 1TB | up to 10,000 MB/s | up to 8,500 MB/s | 600TBW | YES | TM8FFJ001T0C129 | ADD |
| GA PRO M.2 PCIe 5.0 SSD | 8TB | up to 10,000 MB/s | up to 8,500 MB/s | 4800TBW | YES | TM8FGL008TTC133 | ADD |

(Source: https://www.teamgroupinc.com/en/product-detail/ssd/T-FORCE/ge-pro/ge-pro-TM8FFS001T0C129/ (last visited July 10, 2026) (annotation added)).

28.    Claim 15 of the '846 patent recites an auxiliary non-volatile memory.

29.     On information and belief, Defendant's T-FORCE GE PRO PCIe 5.0 SSD product utilizes physical TLC NAND flash memory configured with an SLC write cache.

30.     Claim 15 of the '846 patent recites a processor, which is coupled, responsively to an interruption of the external electrical power during the storage operation, to back-up the cached write commands and the cached execution status in the auxiliary non-volatile memory and, upon resumption of the external electrical power, to recover the backed-up execution status of the storage operation, so as to resume the interrupted storage operation based on the recovered execution status.

31.     On information and belief, Defendant's T-FORCE GE PRO PCIe 5.0 SSD product includes an SSD controller, such as an InnoGrit IG5666 controller. The SSD controller is operative to accept write commands belonging to a storage operation invoked by a host computer and cache them alongside a current execution status—including real-time Flash Translation Layer (FTL) and Logical-to-Physical (L2P) metadata indicating what data paths have started changing—in its volatile DRAM cache. Upon detecting a power interruption, the controller coordinates an emergency sequence utilizing residual circuit energy to back-up the cached write commands and the L2P metadata execution status from the temporary DRAM buffer into permanent, non-volatile NAND flash memory. Upon subsequent resumption of external power, the controller retrieves this preserved data from the NAND to recover the backed-up execution status, reconstructing the exact state of the in-flight storage operation and allowing the storage apparatus to seamlessly resume the interrupted storage operation based on that recovered status without data loss.

32.     Other exemplary '846 Accused Products include: T-FORCE GA PRO PCIe 5.0 SSD; T-FORCE GC PRO PCIe 5.0 SSD; T-FORCE CARDEA Z540 PCIe 5.0 SSD; T-CREATE CLASSIC H514 PCIe 5.0 SSD; T-FORCE CARDEA A440 PRO (and standard A440) PCIe 4.0

SSD; T-FORCE CARDEA Zero Z440 PCIe 4.0 SSD; T-FORCE CARDEA Ceramic C440 PCIe 4.0 SSD; T-FORCE CARDEA Liquid PCIe 3.0 SSD; T-FORCE CARDEA II PCIe 3.0 SSD; TEAMGROUP MP34 M.2 PCIe SSD; TEAMGROUP T-FORCE DELTA MAX RGB SATA III SSD; and TEAMGROUP T-FORCE VULCAN SATA III SSD.

33. Defendant has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least claim 15 of the '846 patent pursuant to 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States, without Palisade's authorization, the '846 Accused Products, which constitute apparatuses for data storage that satisfy each and every limitation of at least claim 15.

34. Since at least the filing of this Complaint, Defendant has had knowledge of the '846 patent. Since at least that time, Defendant has indirectly infringed and continues to indirectly infringe at least claim 15 of the '846 patent pursuant to 35 U.S.C. § 271(b) by actively inducing others—including its distributors, retailers, and end-users—to directly infringe the '846 patent. Defendant does so with knowledge of the '846 patent and with the specific intent to cause direct infringement by purposefully providing user manuals, product specifications, marketing materials, and technical support that instruct and encourage third parties to use and operate the '846 Accused Products in a manner that satisfies each and every limitation of at least claim 15.

35. As a result of Defendant's infringement of the '846 patent, Plaintiff Palisade has suffered and will continue to suffer severe damages. Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to recover damages from Defendant adequate to compensate for the infringement, in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## COUNT II
### (Infringement of U.S. Patent No. 8,327,051)

36.     Plaintiff incorporates the preceding paragraphs herein by reference.

37.     The '051 patent is valid, enforceable, and was duly and legally issued by the USPTO on December 4, 2012, after full and fair examination.

38.     A copy of the '051 patent is available from the USPTO at https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8327051 (last visited July 10, 2026).

39.     Defendant infringes at least claim 1 of the '051 patent by making, using, offering to sell, and selling in, and/or importing into the United States portable handheld memory cards comprising: a Universal Serial Bus (USB) port comprising a first set of pins, such as a USB2.0 port; USB controller circuitry electrically connected with the first set of pins of the USB port, such as USB2.0 controller circuitry; an input/output (I/O) port comprising a second set of pins, such as a USB4 port; I/O controller circuitry electrically connected with the second set of pins of the I/O port, such as USB4 controller circuitry; a memory in communication with the USB port and the I/O port, such as a flash memory; and a housing storing the memory and exposing the USB port and the I/O port, such as a plastic, rubber, and/or metal housing exposing the USB2.0 and USB4 ports; wherein the USB port and the I/O port are positioned on a same end to allow a same card-insertion direction irrespective of whether a host device comprises a mating USB port or a mating I/O port; and wherein the USB port and the I/O port are positioned such that when the I/O port is electrically connected with the host device, at least one of the first set of pins of the USB port is not electrically connected to the host device, and when the USB port is electrically connected to the host device, at least one of the second set of pins of the I/O port is not electrically connected to the host device (the "'051 Accused Products").

40.     Defendant's PD40 Mini External SSD product is an exemplary '051 Accused Product.

41.     Claim 1 of the '051 patent recites a portable handheld memory card.

42.     On information and belief, and only to the extent that the preamble is limiting, Defendant's PD40 Mini External SSD product is a portable handheld memory card. Defendant describes its PD40 Mini External SSD product as constituting "portable storage." Defendant's PD40 Mini External SSD product is shown in the photograph below, supplied by Defendant:



(Source: https://www.teamgroupinc.com/en/product-detail/ssd/external/pd40/pd40-

TPSQGN004T0C102/ (last visited July 10, 2026)).

43.     Claim 1 of the '051 patent recites a Universal Serial Bus (USB) port comprising a first set of pins; USB controller circuitry electrically connected with the first set of pins of the USB port.

44.     On information and belief, Defendant's PD40 Mini External SSD product includes a USB Type-C receptacle, shown on the left side of the product in the photograph reproduced above. The USB Type-C interface on Defendant's PD40 Mini External SSD product contains a top row of pins and a bottom row of pins. Defendant's PD40 Mini External SSD product includes

internal USB2.0 controller circuitry that uses the pins known as $A_6$, $A_7$, $B_6$, and $B_7$ to communicate data pursuant to the USB2.0 protocol.

45. Claim 1 of the '051 patent recites an input/output (I/O) port comprising a second set of pins; I/O controller circuitry electrically connected with the second set of pins of the I/O port.

46. On information and belief, Defendant's PD40 Mini External SSD product includes internal USB4 controller circuitry, having distinct electronics from the USB2.0 controller circuitry, that uses the pins known as $A_2$, $A_3$, $A_{10}$, $A_{11}$, $B_2$, $B_3$, $B_{10}$, and $B_{11}$ to communicate data pursuant to the USB4 protocol. The $A_2$, $A_3$, $A_{10}$, $A_{11}$, $B_2$, $B_3$, $B_{10}$, and $B_{11}$ pins are separate and distinct from the pins used to communicate data pursuant to the USB2.0 protocol.

47. Claim 1 of the '051 patent recites a memory in communication with the USB port and the I/O port.

48. On information and belief, Defendant's PD40 Mini External SSD product includes NAND flash memory in 1 TB / 2 TB / 4 TB capacities. Data is communicated to the NAND flash drive via the USB2.0 and USB4 ports on Defendant's PD40 Mini External SSD product.

49. Claim 1 of the '051 patent recites a housing storing the memory and exposing the USB port and the I/O port.

50. On information and belief, Defendant's PD40 Mini External SSD product includes a housing made from a combination of plastic, rubber, and/or metal for storing the NAND flash memory and the USB2.0 and USB4 ports.

51. Claim 1 of the '051 patent recites wherein the USB port and the I/O port are positioned on a same end to allow a same card-insertion direction irrespective of whether a host device comprises a mating USB port or a mating I/O port.

52.     On information and belief, the USB2.0 and USB4 ports are positioned on the same end of Defendant's PD40 Mini External SSD product to allow Defendant's PD40 Mini External SSD product to connect via cable to a host device having USB2.0 or USB4 ports.

53.     Claim 1 of the '051 patent recites wherein the USB port and the I/O port are positioned such that when the I/O port is electrically connected with the host device, at least one of the first set of pins of the USB port is not electrically connected to the host device, and when the USB port is electrically connected to the host device, at least one of the second set of pins of the I/O port is not electrically connected to the host device.

54.     On information and belief, when Defendant's PD40 Mini External SSD product is using USB2.0 to communicate data, the pins known as $A_2$, $A_3$, $A_{10}$, $A_{11}$, $B_2$, $B_3$, $B_{10}$, and $B_{11}$ are not used to communicate data. When Defendant's PD40 Mini External SSD product is using USB4 to communicate data, the pins known as $A_6$, $A_7$, $B_6$, and $B_7$ are not used to communicate data.

55.     Other exemplary '051 Accused Products include: T-FORCE M200 Portable SSD; TEAMGROUP PD20 Mini External SSD; T-CREATE EXPERT P34F "Find My" External SSD; T-CREATE EXPERT P35S External SSD; T-CREATE EXPERT P35SG External SSD; T-CREATE EXPERT P33 External SSD; TEAMGROUP PD1000 Portable SSD; TEAMGROUP PD20 ECO Mini External SSD; TEAMGROUP X2 MAX Portable SSD; TEAMGROUP X1 MAX Dual Flash Drive; TEAMGROUP PD400 Portable SSD; TEAMGROUP X1 2-in-1 Flash Drive (TX1); and TEAMGROUP M211 OTG Flash Drive.

56.     Defendant has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least claim 1 of the '051 patent pursuant to 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States, without

Palisade's authorization, the '051 Accused Products, which constitute portable handheld memory cards that satisfy each and every limitation of at least claim 1.

57.    Since at least the filing of this Complaint, Defendant has had knowledge of the '051 patent. Since at least that time, Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '051 patent pursuant to 35 U.S.C. § 271(b) by actively inducing others—including its distributors, retailers, and end-users—to directly infringe the '051 patent. Defendant does so with knowledge of the '051 patent and with the specific intent to cause direct infringement by purposefully providing promotional data, installation guides, and technical literature that instruct and encourage third parties to handle and operate the '051 Accused Products in a manner that satisfies each and every limitation of at least claim 1.

58.    As a result of Defendant's infringement of the '051 patent, Plaintiff Palisade has suffered and will continue to suffer severe damages. Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to recover damages from Defendant adequate to compensate for the infringement, in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

### COUNT III
**(Infringement of U.S. Patent No. 9,281,314)**

59.    Plaintiff incorporates the preceding paragraphs herein by reference.

60.    The '314 patent is valid, enforceable, and was duly and legally issued by the USPTO on March 8, 2016, after full and fair examination.

61.    A copy of the '314 patent is available from the USPTO at https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9281314 (last visited July 10, 2026).

62.    Defendant infringes at least claim 1 of the '314 patent by making, using, offering to sell, and selling in, and/or importing into the United States memory devices comprising: a

- 14 -

plurality of lines of memory cells, the memory cells comprising: a charge storage region having sidewalls; and a control gate; a plurality of word lines each having sidewalls, each of the word lines being associated with a line of the memory cells, each of the word lines being coupled to the control gates of the memory cells with which it is associated; first oxide regions that cover the sidewalls of the charge storage regions; second oxide regions that cover the sidewalls of the word lines; nitride regions that cover the second oxide regions; and electrical isolation regions other than silicon nitride adjacent to the first oxide regions that cover the sidewalls of the charge storage regions.

63.    Defendant infringes at least claim 3 of the '314 patent by making, using, offering to sell, and selling in, and/or importing into the United States the memory devices of claim 1, wherein the word lines comprise tungsten.

64.    Defendant infringes at least claim 5 of the '314 patent by making, using, offering to sell, and selling in, and/or importing into the United States the memory devices of claim 1, wherein the charge storage region is a dielectric charge trapping region.

65.    Defendant infringes at least claim 6 of the '314 patent by making, using, offering to sell, and selling in, and/or importing into the United States the memory devices of claim 1, further comprising peripheral circuitry, wherein the word lines are electrically coupled to the peripheral circuitry.

66.    Defendant infringes at least claim 13 of the '314 patent by importing into the United States and/or offering to sell, selling, and/or using within the United States memory devices formed by the following process: forming a plurality of lines of memory cells, the memory cells comprising: a charge storage region having sidewalls; and a control gate; forming a plurality of word lines each having sidewalls, each of the word lines being associated with a line of the memory

cells, each of the word lines being coupled to the control gates of the memory cells with which it is associated; forming first oxide regions that cover the sidewalls of the charge storage regions; forming second oxide regions that cover the sidewalls of the word lines; forming nitride regions that cover the second oxide regions; and forming electrical isolation regions other than silicon nitride adjacent to the first oxide regions that cover the sidewalls of the charge storage regions.

67. Defendant infringes at least claim 17 of the '314 patent by making, using, offering to sell, and selling in, and/or importing into the United States memory devices formed by the method of claim 13, wherein forming the plurality of word lines comprises forming the plurality of word lines from tungsten.

68. Defendant infringes at least claim 18 of the '314 patent by making, using, offering to sell, and selling in, and/or importing into the United States the memory devices formed by the method of claim 13, wherein forming the plurality of lines of memory cells comprises forming the charge storage regions comprising a dielectric charge trapping region (together with products that infringe at least claims 1, 3, 5, 6, 13, and/or 17 of the '314 patent, the "'314 Accused Products").

69. Defendant's T-FORCE GE PRO PCIe 5.0 SSD product is an exemplary '314 Accused Product.

70. On information and belief, Defendant's T-FORCE GE PRO PCIe 5.0 SSD product includes the X3-9070 NAND product made and sold by Yangtze Memory Technologies Company, Ltd. ("YMTC"). (Source: https://www.techpowerup.com/review/team-group-gc-pro-2-tb/ (last visited July 10, 2026)).

71. Claim 1 of the '314 patent recites a memory device.

72. On information and belief, and only to the extent that the preamble is limiting, Defendant's T-FORCE GE PRO PCIe 5.0 SSD product is an SSD product and therefore utilizes

an integrated circuit assembly of non-volatile flash memory to store and retain data electronically requiring no moving parts.

73.    Claim 1 of the '314 patent recites a plurality of lines of memory cells.

74.    On information and belief, NAND flash memory in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product includes a plurality of lines of memory cells. For example, the plurality of lines is shown in the cross-section below:



(Source: TEM Image of X3-9070).

75.    Claim 1 of the '314 patent recites the memory cells comprising a charge storage region having sidewalls and a control gate.

76.    On information and belief, NAND flash memory in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product includes a charge storage region having sidewalls and a control gate. For example, a top-down view of NAND flash memory in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product shows a charge storage region having sidewalls and a control gate:



TEM Planar-section of the 3D NAND Flash Memory Array

(Source: TEM Image of X3-9070).

77.    Claim 1 of the '314 patent recites a plurality of word lines each having sidewalls, each of the word lines being associated with a line of the memory cells, each of the word lines being coupled to the control gates of the memory cells with which it is associated.

78.    On information and belief, NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product includes a plurality of word lines each having sidewalls, each of the word lines being associated with a line of the memory cells, each of the word lines being coupled to the control gates of the memory cells with which it is associated. For example, a top-down view of NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product shows the word lines are coupled to the control gate:



TEM Planar-section of the 3D NAND Flash Memory Array

(Source: TEM Image of X3-9070).

79.    The below cross-section of NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product shows tungsten word lines that have side walls and are each coupled to the control gates of the memory cells:



TEM Cross-section of the 3D NAND Flash Memory Array

(Source: TEM Image of X3-9070).



(Source: TEM Image of X3-9070).

80.    Claim 1 of the '314 patent recites first oxide regions that cover the sidewalls of the charge storage regions.

81.    On information and belief, NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product includes first oxide regions that cover the sidewalls of the charge storage regions. For example, a top-down view of NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product shows the sidewalls of the charge storage regions are covered by a silicon oxide region and a silicon oxynitride region:



(Source: TEM Image of X3-9070).

82.    Claim 1 of the '314 patent recites second oxide regions that cover the sidewalls of the word lines and nitride regions that cover the second oxide regions.

83.    On information and belief, NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product includes second oxide regions that cover the sidewalls of the word

lines and nitride regions that cover the second oxide regions. For example, a cross-section of NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product shows a second oxide region of aluminum oxide or silicon oxide that covers the sidewalls of the word lines and the second oxide region is covered in TiN:



(Source: TEM Image of X3-9070).

84.　　Claim 1 of the '314 patent recites electrical isolation regions other than silicon nitride adjacent to the first oxide regions that cover the sidewalls of the charge storage regions.

85.　　On information and belief, NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product includes electrical isolation regions other than silicon nitride adjacent to the first oxide regions that cover the sidewalls of the charge storage regions. For example, a top-down view of NAND flash memory used in Defendant's T-FORCE GE PRO PCIe

5.0 SSD product shows a separate polysilicon region that is adjacent to the first oxide region and covers the charge storage region:



(Source: TEM Image of X3-9070).

86. Claim 3 of the '314 patent recites the memory device of claim 1, wherein the word lines comprise tungsten.

87. On information and belief, NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product includes word lines comprising tungsten.



TEM Cross-section of the 3D NAND Flash Memory Array

(Source: TEM Image of X3-9070).



(Source: TEM Image of X3-9070).

88.     Claim 5 of the '314 patent recites the memory device of claim 1, wherein the charge storage region is a dielectric charge trapping region.

89.     On information and belief, the charge storage region in NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD is a dielectric charge trapping region. For example, the charge storage region in NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product is made of SiN:



(Source: TEM Image of X3-9070).

90.     Claim 6 of the '314 patent recites the memory device of claim 1, further comprising peripheral circuitry, wherein the word lines are electrically coupled to the peripheral circuitry.

91.     On information and belief, NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product further comprises peripheral circuitry, wherein the word lines are electrically coupled to the peripheral circuitry. For example, NAND flash memory used in

Defendant's T-FORCE GE PRO PCIe 5.0 SSD product contains NAND flash control logic that is electrically coupled to the word lines in order to select rows during read and programming operations:

## Wafers and layers: Fab advancements at China's YMTC

Chris Mellor

Published Mon 25 Jul 2022 // 11:13 UTC

China's Yangtze Memory Technology Corp is reportedly developing 196 and 232 layer NAND, building a second fab and talking to Apple as it devises a way to increase its NAND market share past 5 percent.

YMTC is part of China's initiative to become self-sufficient in technology and is currently selling 64-layer 3D NAND and a 128-layer product made by stacking two 64-layer dies together. It has a separate logic controller die, electrically connected through metal VIAs (Vertical Interconnect Accesses), and bonded to the top of its NAND cell dies. This is branded as Xtacking technology. The NAND is formatted as TLC (3bits/cell) or QLC (4 bits/cell).

(Source: https://www.blocksandfiles.com/flash/2022/07/25/wafers-and-layers-fab-advancements-at-chinas-ymtc/1603817 (last visited July 10, 2026) (emphasis added)).

92.    Defendant has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least claims 1, 3, 5, and 6 of the '314 patent pursuant to 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States, without Palisade's authorization, the '314 Accused Products, which constitute apparatuses that satisfy each and every limitation of at least claim 1, 3, 5, and 6.

93.    Since at least the filing of this Complaint, Defendant has had knowledge of the '314 patent. Since at least that time, Defendant has indirectly infringed and continues to indirectly infringe at least claims 1, 3, 5, and 6 of the '314 patent pursuant to 35 U.S.C. § 271(b) by actively inducing others—including its component suppliers, system integrators, and end-users—to directly infringe the '314 patent. Defendant does so with knowledge of the '314 patent and with the specific intent to cause direct infringement by purposefully distributing data sheets, validation reports, and compatibility guides that instruct and encourage third parties to deploy and use the

'314 Accused Products in a manner that satisfies each and every limitation of at least claims 1, 3, 5, and 6.

94. Claim 13 of the '314 patent recites a method of forming a memory device.

95. On information and belief, Defendant's T-FORCE GE PRO PCIe 5.0 SSD product includes the X3-9070 NAND product manufactured by Yangtze Memory Technologies Company, Ltd. ("YMTC"). (Source: https://www.techpowerup.com/review/team-group-gc-pro-2-tb/ (last visited July 10, 2026)).

96. On information and belief, and only to the extent that the preamble is limiting, Defendant's T-FORCE GE PRO PCIe 5.0 SSD product is an SSD product containing a memory device. The memory device used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product was manufactured by forming a memory device.

97. Claim 13 of the '314 patent recites forming a plurality of lines of memory cells.

98. On information and belief, memory devices used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product were manufactured by forming a plurality of lines of memory cells. For example, the below cross-section of memory devices used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product indicates that a plurality of lines of memory cells were formed:



(Source: TEM Image of X3-9070).

99.     Claim 13 of the '314 patent recites memory cells comprising charge storage region having sidewalls and a control gate.

100.    On information and belief, memory devices used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product were manufactured by forming a plurality of lines of memory cells, wherein the memory cells comprise charge storage region having sidewalls and a control gate. For example, a top-down view of memory devices used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product shows a charge storage region having sidewalls and a control gate:



TEM Planar-section of the 3D NAND Flash Memory Array

(Source: TEM Image of X3-9070).

101.    Claim 13 of the '314 patent recites forming a plurality of word lines each having sidewalls, each of the word lines being associated with a line of the memory cells, each of the word lines being coupled to the control gates of the memory cells with which it is associated.

102.    On information and belief, memory devices used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product were manufactured by forming a plurality of word lines each having

sidewalls, each of the word lines being associated with a line of the memory cells, each of the word lines being coupled to the control gates of the memory cells with which it is associated. For example, a top-down view of memory devices used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product shows the word lines are coupled to the control gate:



TEM Planar-section of the 3D NAND Flash Memory Array

(Source: TEM Image of X3-9070).

And the below cross-section of memory devices used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product shows tungsten word lines that have side walls and are each coupled to the control gates of the memory cells:



TEM Cross-section of the 3D NAND Flash Memory Array

(Source: TEM Image of X3-9070).



(Source: TEM Image of X3-9070).

103.    Claim 13 of the '314 patent recites forming first oxide regions that cover the sidewalls of the charge storage regions.

104.    On information and belief, memory devices used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product were manufactured by forming first oxide regions that cover the sidewalls of the charge storage regions. For example, a top-down view of memory devices used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product shows the sidewalls of the charge storage regions are covered by a silicon oxide region and a silicon oxynitride region:



(Source: TEM Image of X3-9070).

105.    Claim 13 of the '314 patent recites forming second oxide regions that cover the sidewalls of the word lines; forming nitride regions that cover the second oxide regions.

106.    On information and belief, memory devices used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product were manufactured by forming second oxide regions that cover the

sidewalls of the word lines; forming nitride regions that cover the second oxide regions. For example, a top-down view of memory devices used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product shows a second oxide region of aluminum oxide or silicon oxide that covers the sidewalls of the word lines and the second oxide region is covered in 2-4 nm TiN:



(Source: TEM Image of X3-9070).

107.　Claim 13 of the '314 patent recites forming electrical isolation regions other than silicon nitride adjacent to the first oxide regions that cover the sidewalls of the charge storage regions.

108.　On information and belief, memory devices used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product were manufactured by forming electrical isolation regions other than

silicon nitride adjacent to the first oxide regions that cover the sidewalls of the charge storage regions. For example, a top-down view of memory devices used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product shows a separate polysilicon region that is adjacent to the first oxide region and covers the charge storage region:



(Source: TEM Image of X3-9070).

109.    Claim 17 of the '314 patent recites the method of claim 13, wherein forming the plurality of word lines comprises forming the plurality of word lines from tungsten.

110.    On information and belief, memory devices used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product were manufactured by forming the plurality of word lines from tungsten, as shown below:



TEM Cross-section of the 3D NAND Flash Memory Array

(Source: TEM Image of X3-9070).



(Source: TEM Image of X3-9070).

111.    Claim 18 of the '314 patent recites the method of claim 13, wherein forming the plurality of lines of memory cells comprises forming the charge storage regions comprising a dielectric charge trapping region.

112.    On information and belief, memory devices used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product were manufactured by forming the charge storage regions comprising a dielectric charge trapping region. For example, the charge storage region in NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product is made of SiN:



(Source: TEM Image of X3-9070).

113.    Defendant infringes at least claims 13, 17, and 18 of the '314 patent under 35 U.S.C. § 271(g). On information and belief, Defendant's T-FORCE GE PRO PCIe 5.0 SSD is an exemplary memory product that incorporates infringing memory devices manufactured abroad by YMTC using the process set forth in claims 13, 17, and 18 of the '314 patent, which Defendant

subsequently imports, offers for sale, sells, and/or uses within the United States without authority during the term of the '314 patent.

114.   On information and belief, Defendant's offer to sell, sale, and/or use within the United States of memory devices made by the process set forth in claims 13, 17, and 18 of the '314 patent is neither non-commercial nor retail.

115.   On information and belief, Defendant does not materially change the memory devices made by the process set forth in claims 13, 17, and 18 of the '314 patent. Rather, Defendant incorporates memory devices made by the process set forth in claims 13, 17, and 18 of the '314 patent into its memory products without material change.

116.   On information and belief, the memory devices made by the process set forth in claims 13, 17, and 18 of the '314 patent are not trivial and nonessential components of another product. Rather, the NAND flash memory products made by the process set forth in claims 13, 17, and 18 of the '314 patent and incorporated into Defendant's memory products constitute substantial and essential components of Defendant's memory products.

117.   Since at least the filing of this Complaint, Defendant has had knowledge of the '314 patent. Since at least that time, Defendant has indirectly infringed and continues to indirectly infringe at least claims 13, 17, and 18 of the '314 patent pursuant to 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing others—including its domestic distributors, e-commerce partners, system integrators, and retail end-users—to directly infringe claims 13, 17, and 18 of the '314 patent.

118.   Specifically, Defendant's affirmative commercial distribution, marketing, and sale of the '314 Accused Products within the United States directly causes its downstream distributors, retailers, system integrators, and end-users to commit independent acts of direct infringement

under 35 U.S.C. § 271(g). These third parties directly infringe by subsequently selling, offering for sale, and/or using within the United States, without authorization, the '314 Accused Products, which incorporate foreign-manufactured memory devices formed abroad by processes that satisfy each and every limitation of claims 13, 17, and 18.

119.     Defendant acts with the specific intent to cause these downstream direct acts of infringement under § 271(g) by purposefully providing global retail distribution pipelines, product datasheets, user manuals, validation reports, and technical marketing documentation that explicitly instruct, encourage, and facilitate the domestic resale, integration, and deployment of the '314 Accused Products by third parties with knowledge that such acts cause the utilization of products manufactured by the exact processes claimed in claims 13, 17, and 18 of the '314 patent

120.     Other exemplary '314 Accused Products include: TEAMGROUP MP33Q M.2 NVMe SSD (YMTC X2-6070); TEAMGROUP CX2 SATA III SSD (YMTC X2-6070); TEAMGROUP EX2 SATA III SSD (YMTC X2-6070); TEAMGROUP MP44L M.2 PCIe 4.0 SSD (YMTC X3-9060); T-CREATE CLASSIC PCIe 4.0 DL SSD (YMTC X3-9060); TEAMGROUP MP44 M.2 PCIe 4.0 SSD (YMTC X3-9070); T-FORCE GA PRO PCIe 5.0 SSD (YMTC X3-9070); T-FORCE GE PRO PCIe 5.0 SSD (YMTC X3-9070); TEAMGROUP MP44Q M.2 PCIe 4.0 SSD (YMTC X3-6070); T-FORCE GE PRO PCIe 5.0 SSD (YMTC X4-9060); T-FORCE GE PRO PCIe 5.0 SSD (YMTC X4-9070); T-CREATE AI Workstation Client SSD (YMTC X4-9060); T-CREATE AI Workstation Client SSD (YMTC X4-9070); TEAMGROUP Industrial PCIe Gen 5 Server Module (YMTC X4-9060); and TEAMGROUP Industrial PCIe Gen 5 Server Module (YMTC X4-9070).

121.     As a result of Defendant's infringement of the '314 patent, Plaintiff Palisade has suffered and will continue to suffer severe damages. Pursuant to 35 U.S.C. § 284, Plaintiff is

entitled to recover damages from Defendant adequate to compensate for the infringement, in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## COUNT IV
### (Infringement of U.S. Patent No. 9,524,974)

122. Plaintiff incorporates the preceding paragraphs herein by reference.

123. The '974 patent is valid, enforceable, and was duly and legally issued by the USPTO on December 20, 2016, after full and fair examination.

124. A copy of the '974 patent is available from the USPTO at https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9524974 (last visited July 10, 2026).

125. Defendant infringes at least claim 17 of the '974 patent by importing into the United States and/or offering to sell, selling, and/or using within the United States NAND flash memory products formed by the following process: forming a plurality of NAND strings disposed on a surface of a substrate; depositing a dielectric layer over the plurality of NAND strings; forming a plurality of mandrels on the dielectric layer; forming a liner layer along side surfaces of the plurality of mandrels; forming sidewall spacers on the liner layer along side surfaces of the plurality of mandrels; removing the plurality of mandrels to leave a pattern of sidewall spacers with portions of liner layer material; subsequently etching a plurality of first trenches in the dielectric layer, an individual first trench formed at a location between sidewall spacers that were formed on a common mandrel; etching a plurality of second trenches in the dielectric layer, an individual second trench formed at a location between sidewall spacers that were formed on neighboring mandrels; and depositing copper in the plurality of first trenches to form a plurality of bit lines located in the first trenches.

126.     Defendant infringes at least claim 18 of the '974 patent by making, using, offering to sell, and selling in, and/or importing into the United States the memory devices formed by the method of claim 17 further comprising depositing the copper in the plurality of second trenches to form a plurality of additional bit lines.

127.     Defendant infringes at least claim 20 of the '974 patent by making, using, offering to sell, and selling in, and/or importing into the United States the memory devices formed by the method of claim 17 wherein the dielectric layer is formed of silicon oxide, the liner layer is formed of silicon oxide, the sidewall spacers are formed of silicon nitride, and wherein the etching uses anisotropic etching that has a significantly higher etch rate for silicon oxide than for silicon nitride (together with products that infringe at least claims 17 and/or 18 of the '974 patent, the "'974 Accused Products").

128.     Defendant's T-FORCE GE PRO PCIe 5.0 SSD product is an exemplary '974 Accused Product.

129.     On information and belief, Defendant's T-FORCE GE PRO PCIe 5.0 SSD product includes the X3-9070 NAND product manufactured by YMTC. (Source: https://www.techpowerup.com/review/team-group-gc-pro-2-tb/ (last visited July 10, 2026)).

130.     Claim 17 of the '974 patent recites a method of forming a NAND flash memory.

131.     On information and belief, and only to the extent that the preamble is limiting, Defendant's T-FORCE GE PRO PCIe 5.0 SSD product is an SSD product containing NAND flash memory. The NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product was manufactured by forming a NAND flash memory.

132.     Claim 17 of the '974 patent recites forming a plurality of NAND strings disposed on a surface of a substrate.

133.    On information and belief, NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product was manufactured by forming a plurality of NAND strings disposed on a surface of a substrate. For example, the annotated cross-section below of NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product illustrates the formation of a plurality of NAND strings disposed on the surface of a substrate.



(Source: SEM and TEM Image of X3-9070).

134.    Claim 17 of the '974 patent recites depositing a dielectric layer over the plurality of NAND strings.

135.    On information and belief, NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product was manufactured by depositing a dielectric layer over the plurality of NAND strings. For example, the annotated cross-section below of NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product illustrates the depositing of the dielectric layer.



(Source: TEM Image of X3-9070).

136.    Claim 17 of the '974 patent recites forming a plurality of mandrels on the dielectric layer.

137.    On information and belief, NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product was manufactured by forming a plurality of mandrels on the dielectric layer. This is evidenced by the pitch spacing in the below cross-section of NAND flash

memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product produced through SEM imaging showing a pitch of ~40 nm.



(Source: SEM and TEM Image of X3-9070).

138.    The ~40nm pitch suggests the use of self-aligned double patterning (SADP), which relies on mandrels because mandrels are the "parent" structures that create the spacers which become the actual fine-pitch pattern. *See* https://www.techinsights.com/blog/ymtc-chinas-first-mass-producer-3d-nand-flash-memory-chips; *see also* https://www.semiconductor-digest.com/unlocking-the-secrets-of-the-ymtc-64-layer-3d-xtacking-nand-flash/ (stating that "self-aligned double patterning (SADP) is likely used" where the bitline pitch is 40nm).

139.    Claim 17 of the '974 patent recites forming a liner layer along side surfaces of the plurality of mandrels; forming sidewall spacers on the liner layer along side surfaces of the

- 42 -

plurality of mandrels; and removing the plurality of mandrels to leave a pattern of sidewall spacers with portions of liner layer material.

140.    On information and belief, NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product was manufactured by forming a liner layer along side surfaces of the plurality of mandrels, forming sidewall spacers on the liner layer along side surfaces of the plurality of mandrels, and removing the plurality of mandrels to leave a pattern of sidewall spacers with portions of liner layer material. As part of its SADP process, YMTC uses a liner layer that coats the side surfaces of the plurality of mandrels. The liner layer protects the mandrel during spacer etchback. Thereafter, a thicker conformal layer of spacer material is deposited on the liner layer. The spacer material is deposited on the liner layer to ensure clean mandrel removal and provide an etch stop during the spacer etch. As detailed above, the use of SADP in manufacturing the NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product necessitates the use of mandrels. The removal of such mandrels is evidenced by the fact the mandrels do not appear in the cross section of NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product produced through SEM imaging. After the removal of mandrels, a pattern of sidewall spacers with portions of liner layer material remains. This is evidenced by the "cat ear" like structures atop the bitlines, which the SEM imaging confirms are composed of a different material than the sidewalls of the bitlines.



(Source: SEM and TEM Image of X3-9070).

141.    Claim 17 of the '974 patent recites subsequently etching a plurality of first trenches in the dielectric layer, an individual first trench formed at a location between sidewall spacers that were formed on a common mandrel.

142.    On information and belief, NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product was manufactured by subsequently etching a plurality of first trenches in the dielectric layer, an individual first trench formed at a location between sidewall spacers that were formed on a common mandrel, as illustrated by the following imagery:

- 45 -

First Trenches



(Source: TEM Image of X3-9070).

143.    Claim 17 of the '974 patent recites etching a plurality of second trenches in the dielectric layer, an individual second trench formed at a location between sidewall spacers that were formed on neighboring mandrels.

144.    On information and belief, NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product was manufactured by etching a plurality of second trenches in the dielectric layer, an individual second trench formed at a location between sidewall spacers that were formed on neighboring mandrels, as illustrated by the following imagery:



(Source: TEM Image of X3-9070).

145.    Claim 17 of the '974 patent recites depositing copper in the plurality of first trenches to form a plurality of bit lines located in the first trenches.

146.    On information and belief, NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product was manufactured by depositing copper in the plurality of first trenches to form a plurality of bit lines located in the first trenches, as illustrated by the following imagery:



(Source: TEM Image of X3-9070).

The TEM imaging of the accused products confirms that copper is deposited in the bitlines:




(Source: TEM Image of X3-9070).

147.    Claim 18 of the '974 patent recites the method of claim 17 further comprising depositing the copper in the plurality of second trenches to form a plurality of additional bit lines.

148.    On information and belief, NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product was manufactured by depositing copper in the plurality of second trenches to form a plurality of additional bit lines, as shown below:



(Source: TEM Image of X3-9070).

149.    Claim 20 of the '974 patent recites the method of claim 17 wherein the dielectric layer is formed of silicon oxide, the liner layer is formed of silicon oxide, the sidewall spacers are formed of silicon nitride, and wherein the etching uses anisotropic etching that has a significantly higher etch rate for silicon oxide than for silicon nitride.

150.    On information and belief, NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product was manufactured by a process in which the dielectric layer is formed of silicon oxide, the liner layer is formed of silicon oxide, the sidewall spacers are formed of silicon nitride, and the etching uses anisotropic etching that has a significantly higher etch rate

- 48 -

for silicon oxide than for silicon nitride. The dielectric layer is formed of silicon oxide, as evidenced by the TEM imaging of NAND flash memory (shown upside down compared to the images above) used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product that shows the dielectric layer comprises silicon and oxygen:



(Source: TEM Image of X3-9070).

The liner layer is formed of silicon oxide, as evidenced by the TEM imaging of NAND flash memory used in Defendant's T-FORCE GE PRO PCIe 5.0 SSD product that shows the region where the liner layer was comprises silicon and oxygen:



(Source: TEM Image of X3-9070).

The sidewall spacers are formed of silicon nitride:



(Source: TEM Image of X3-9070).

The etching uses anisotropic etching that has a significantly higher etch rate for silicon oxide than for silicon nitride, as evidenced by the greater quantity of silicon nitride in the region where the sidewall spacers and liner layer were.

151.    Other exemplary '974 Accused Products include: TEAMGROUP MP33Q M.2 NVMe SSD (YMTC X2-6070); TEAMGROUP CX2 SATA III SSD (YMTC X2-6070); TEAMGROUP EX2 SATA III SSD (YMTC X2-6070); TEAMGROUP MP44L M.2 PCIe 4.0 SSD (YMTC X3-9060); T-CREATE CLASSIC PCIe 4.0 DL SSD (YMTC X3-9060); TEAMGROUP MP44 M.2 PCIe 4.0 SSD (YMTC X3-9070); T-FORCE GA PRO PCIe 5.0 SSD (YMTC X3-9070); T-FORCE GE PRO PCIe 5.0 SSD (YMTC X3-9070); TEAMGROUP MP44Q M.2 PCIe 4.0 SSD (YMTC X3-6070); T-FORCE GE PRO PCIe 5.0 SSD (YMTC X4-9060); T-FORCE GE PRO PCIe 5.0 SSD (YMTC X4-9070); T-CREATE AI Workstation Client SSD (YMTC X4-9060); T-CREATE AI Workstation Client SSD (YMTC X4-9070); TEAMGROUP Industrial PCIe Gen 5 Server Module (YMTC X4-9060); and TEAMGROUP Industrial PCIe Gen 5 Server Module (YMTC X4-9070).

152.    Defendant infringes at least claims 17, 18, and 20 of the '974 patent under 35 U.S.C. § 271(g). On information and belief, Defendant's T-FORCE GE PRO PCIe 5.0 SSD is an exemplary memory product that incorporates infringing NAND flash memory products manufactured abroad by YMTC using the process set forth in claims 17, 18, and 20 of the '974 patent, which Defendant subsequently imports, offers for sale, sells, and/or uses within the United States without authority during the term of the '974 patent.

153.    On information and belief, Defendant's offer to sell, sale, and/or use within the United States of NAND flash memory products made by the process set forth in claims 17, 18, and 20 of the '974 patent is neither non-commercial nor retail.

154.    On information and belief, Defendant does not materially change the NAND flash memory products made by the process set forth in claims 17, 18, and 20 of the '974 patent. Rather,

Defendant incorporates NAND flash memory products made by the process set forth in claims 17, 18, and 20 of the '974 patent into its memory products without material change.

155.    On information and belief, the NAND flash memory products made by the process set forth in claims 17, 18, and 20 of the '974 patent are not trivial and nonessential components of another product. Rather, the NAND flash memory products made by the process set forth in claims 17, 18, and 20 of the '974 patent and incorporated into Defendant's memory products constitute substantial and essential components of Defendant's memory products.

156.    Since at least the filing of this Complaint, Defendant has had knowledge of the '974 patent. Since at least that time, Defendant has indirectly infringed and continues to indirectly infringe at least claims 17, 18, and 20 of the '974 patent pursuant to 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing others—including its domestic distributors, e-commerce partners, system integrators, and retail end-users—to directly infringe claims 17, 18, and 20 of the '974 patent.

157.    Specifically, Defendant's affirmative commercial distribution, marketing, and sale of the '974 Accused Products within the United States directly causes its downstream distributors, retailers, system integrators, and end-users to commit independent acts of direct infringement under 35 U.S.C. § 271(g). These third parties directly infringe by subsequently selling, offering for sale, and/or using within the United States, without authorization, the '974 Accused Products, which incorporate foreign-manufactured NAND flash memory products formed abroad by processes that satisfy each and every limitation of claims 17, 18, and 20.

158.    Defendant acts with the specific intent to cause these downstream direct acts of infringement under § 271(g) by purposefully providing global retail distribution pipelines, product datasheets, user manuals, validation reports, and technical marketing documentation that explicitly

instruct, encourage, and facilitate the domestic resale, integration, and deployment of the '974 Accused Products by third parties with knowledge that such acts cause the utilization of products manufactured by the exact processes claimed in Claims 17, 18, and 20 of the '974 patent.

159.    As a result of Defendant's infringement of the '974 patent, Plaintiff Palisade has suffered and will continue to suffer severe damages. Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to recover damages from Defendant adequate to compensate for the infringement, in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## COUNT V
### (Infringement of U.S. Patent No. 9,530,716)

160.    Plaintiff incorporates the preceding paragraphs herein by reference.

161.    The '716 patent is valid, enforceable, and was duly and legally issued by the USPTO on December 27, 2016, after full and fair examination.

162.    A copy of the '716 patent is available from the USPTO at https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9530716 (last visited July 10, 2026).

163.    Defendant infringes at least claim 7 of the '716 patent by making, using, offering to sell, and selling in, and/or importing into the United States apparatuses comprising: a heat spreading material in thermal communication with a first non-volatile memory component and a second non-volatile memory component, the heat spreading material configured to transfer heat from the first non-volatile memory component and the second non-volatile memory component; and a controller configured to execute one or more temperature dependent management functions in parallel on the first non-volatile memory component and the second non-volatile memory component.

164. Defendant infringes at least claim 8 of the '716 patent by making, using, offering to sell, and selling in, and/or importing into the United States the apparatus of claim 7, wherein the heat spreading material comprises a thermally anisotropic material having higher thermal conductivity within a plane of the heat spreading material than through the plane.

165. Defendant infringes at least claim 9 of the '716 patent by making, using, offering to sell, and selling in, and/or importing into the United States the apparatus of claim 8, wherein the thermally anisotropic material comprises a graphite based material.

166. Defendant infringes at least claim 10 of the '716 patent by making, using, offering to sell, and selling in, and/or importing into the United States the apparatus of claim 7, wherein the heat spreading material comprises a thermally isotropic material.

167. Defendant infringes at least claim 11 of the '716 patent by making, using, offering to sell, and selling in, and/or importing into the United States the apparatus of claim 10, wherein the thermally isotropic material comprises one of a copper material and an aluminum material.

168. Defendant infringes at least claim 12 of the '716 patent by making, using, offering to sell, and selling in, and/or importing into the United States the apparatus of claim 7, wherein the heat spreading material comprises an elongate sheet disposed adjacent to the first and second non-volatile memory components.

169. Defendant infringes at least claim 14 of the '716 patent by making, using, offering to sell, and selling in, and/or importing into the United States the apparatus of claim 7, further comprising one or more substrates for the first non-volatile memory component and the second non-volatile memory component, the one or more substrates providing mechanical support and electrical connections for the first and second non-volatile memory components.

170.    Defendant infringes at least claim 15 of the '716 patent by making, using, offering to sell, and selling in, and/or importing into the United States the apparatus of claim 7, wherein the controller is disposed adjacent to one of the first non-volatile memory component and the second non-volatile memory component such that the controller increases heat in the one of the first non-volatile memory component and the second non-volatile memory component.

171.    Defendant infringes at least claim 16 of the '716 patent by making, using, offering to sell, and selling in, and/or importing into the United States the apparatus of claim 7, wherein the first and second non-volatile memory components are electrically coupled to one or more memory buses in parallel.

172.    Defendant infringes at least claim 17 of the '716 patent by making, using, offering to sell, and selling in, and/or importing into the United States the apparatus of claim 7, wherein the one or more temperature dependent management functions comprise managing a frequency of garbage collection operations on the first non-volatile memory component and the second non-volatile memory component.

173.    Defendant infringes at least claim 18 of the '716 patent by making, using, offering to sell, and selling in, and/or importing into the United States the apparatus of claim 7, wherein the one or more temperature dependent management functions comprise determining read voltage levels for the first non-volatile memory component and the second non-volatile memory component (together with products that infringe at least claims 7, 8, 9, 10, 11, 12, 14, 15, 16, and/or 17 of the '716 patent, the "'716 Accused Products").

174.    Defendant's NV5000 M.2 PCIe 4.0 SSD product is an exemplary '716 Accused Product.

175.    Claim 7 of the '716 patent recites an apparatus.

176.    On information and belief, and only to the extent that the preamble is limiting, Defendant's NV5000 M.2 PCIe 4.0 SSD product is an SSD product and therefore utilizes an integrated circuit assembly of non-volatile flash memory to store and retain data electronically requiring no moving parts.

177.    Claim 7 of the '716 patent recites a heat spreading material in thermal communication with a first non-volatile memory component and a second non-volatile memory component, the heat spreading material configured to transfer heat from the first non-volatile memory component and the second non-volatile memory component.

178.    On information and belief, Defendant's NV5000 M.2 PCIe 4.0 SSD product includes a graphene heat-dissipation label adhered across the top of the M.2 PCB that spans multiple NAND flash packages, thereby serving as a single heat spreading material in direct thermal communication with at least a first non-volatile memory component and a second non-volatile memory component (the multiple NAND packages) and configured to transfer heat away from them.

179.    Claim 7 of the '716 patent recites a controller configured to execute one or more temperature dependent management functions in parallel on the first non-volatile memory component and the second non-volatile memory component.

180.    On information and belief, Defendant's NV5000 M.2 PCIe 4.0 SSD product includes an SSD controller, such as a Realtek RTS5772DL controller. This controller is configured to execute S.M.A.R.T. (Self-Monitoring, Analysis, and Reporting Technology) telemetry features in conjunction with its underlying multi-channel Flash Translation Layer (FTL) firmware. This architecture includes active, temperature-dependent hardware management functions, such as independent channel-level clock-gating, thermal wait-state injections, and package-specific read-

voltage calibrations, executed in parallel across the multiple NAND flash packages on Defendant's NV5000 M.2 PCIe 4.0 SSD product based on real-time thermal inputs.

181. Claim 8 of the '716 patent recites the apparatus of claim 7, wherein the heat spreading material comprises a thermally anisotropic material having higher thermal conductivity within a plane of the heat spreading material than through the plane.

182. On information and belief, Defendant's NV5000 M.2 PCIe 4.0 SSD product satisfies this limitation because its graphene heat-dissipation label comprises a thermally anisotropic material. Specifically, the crystalline carbon/graphene layer within the label possesses an atomic lattice structure that exhibits a substantially higher thermal conductivity along its lateral horizontal plane (in-plane) than it does vertically through its thickness (through-plane). This anisotropic configuration explicitly enables the heat-dissipation label to rapidly channel and spread thermal energy horizontally away from localized NAND and controller hotspots along the length of the SSD plane rather than allowing heat to radiate vertically, thereby optimizing heat transfer across the apparatus.

183. Claim 9 of the '716 patent recites the apparatus of claim 8, wherein the thermally anisotropic material comprises a graphite based material.

184. On information and belief, Defendant's NV5000 M.2 PCIe 4.0 SSD product satisfies this limitation because its graphene heat-dissipation label comprises a graphite based material. Structurally and chemically, graphene is a two-dimensional carbon allotrope consisting of a single layer of carbon atoms that serves as the fundamental building block of graphite (which is composed of multiple stacked graphene sheets). Furthermore, commercial flexible graphene cooling films, such as those utilized in Defendant's thermal labels, are synthesized via the chemical exfoliation or thermal reduction of graphite precursors. Because the underlying material

composition of the heat-dissipation label is structurally identical to, and manufactured directly from, graphite material layers, it constitutes a graphite based material.

185.    Claim 10 of the '716 patent recites the apparatus of claim 7, wherein the heat spreading material comprises a thermally isotropic material.

186.    On information and belief, Defendant's NV5000 M.2 PCIe 4.0 SSD product satisfies this limitation because its heat-dissipation label is a multi-layer composite assembly that comprises a thermally isotropic material. Specifically, while the label incorporates an anisotropic graphene layer to pull heat horizontally, Defendant's thermal label design is a composite structure that further includes an integrated metal foil layer (such as copper or aluminum foil backing) and an interface adhesive layer. Because copper and aluminum are metallic conductors that are thermally isotropic—exhibiting identical thermal conductivity traits in all directions through the three-dimensional material matrix—the inclusion of this isotropic metal layer within the multi-layer thermal label assembly means the heat spreading material comprises a thermally isotropic material. (Source: https://www.tweaktown.com/news/87980/teamgroups-new-pcie-4-0-ssd-uses-heat-dissipating-graphene-label/index.html (last visited July 10, 2026)).

187.    Claim 11 of the '716 patent recites the apparatus of claim 10, wherein the thermally isotropic material comprises one of a copper material and an aluminum material.

188.    On information and belief, Defendant's NV5000 M.2 PCIe 4.0 SSD product satisfies this limitation because the thermally isotropic material included within its multi-layer composite heat-dissipation label explicitly comprises an aluminum material. Public engineering data sheets and independent third-party technical reviews confirm that this multi-layer label is constructed by bonding an advanced conductive graphene coating directly onto a functional underlying aluminum foil layer. Because this structural aluminum backing serves as the primary,

isotropic thermal substrate for the composite label assembly, the apparatus fulfills the limitation requiring the thermally isotropic material to comprise one of a copper material and an aluminum material. (Source: https://www.tweaktown.com/news/87980/teamgroups-new-pcie-4-0-ssd-uses-heat-dissipating-graphene-label/index.html (last visited July 10, 2026)).

189.    Claim 12 of the '716 patent recites the apparatus of claim 7, wherein the heat spreading material comprises an elongate sheet disposed adjacent to the first and second non-volatile memory components.

190.    On information and belief, Defendant's NV5000 M.2 PCIe 4.0 SSD product satisfies this limitation because its graphene heat-dissipation label is structured as an elongate sheet and is positioned directly adjacent to the memory components. Specifically, conforming to the standard rectangular M.2 2280 form factor footprint (80mm x 22mm), the heat-dissipation label consists of a long, narrow, and thin planar strip of material, matching the structural definition of an elongate sheet. Furthermore, this sheet is physically laminated and adhered directly across the upper surface of the SSD's printed circuit board (PCB), placing it in immediate physical proximity and direct surface-to-surface contact with the underlying first and second non-volatile NAND flash packages. Because it spans the length of the drive directly on top of these memory chips, it is an elongate sheet disposed adjacent to the first and second non-volatile memory components.

191.    Claim 14 of the '716 patent recites the apparatus of claim 7, further comprising one or more substrates for the first non-volatile memory component and the second non-volatile memory component, the one or more substrates providing mechanical support and electrical connections for the first and second non-volatile memory components.

192.    On information and belief, Defendant's NV5000 M.2 PCIe 4.0 SSD product satisfies this limitation because its physical architecture incorporates a multi-layer PCB that serves

as the one or more substrates. Specifically, the rigid base of the NV5000's PCB acts as a structural foundation, providing rigid mechanical support to securely hold the surface-mounted first and second non-volatile NAND flash packages, the master controller, and associated passive components in place. Furthermore, the PCB contains integrated internal copper trace layers, conductive vias, and surface-mount pads that establish the electrical connections and signal routing pathways required to link the first and second non-volatile memory components to the master controller and the drive's primary M.2 interface.

193.    Claim 15 of the '716 patent recites the apparatus of claim 7, wherein the controller is disposed adjacent to one of the first non-volatile memory component and the second non-volatile memory component such that the controller increases heat in the one of the first non-volatile memory component and the second non-volatile memory component.

194.    On information and belief, Defendant's NV5000 M.2 PCIe 4.0 SSD product satisfies this limitation because its physical component layout increases heat from the controller to an adjacent memory component. Specifically, conforming to standard M.2 physical layout constraints, the master Realtek RTS5772DL controller is surface-mounted immediately adjacent to the first non-volatile NAND flash package (NAND Package 1) on the PCB surface. Because the high-speed controller logic gates generate substantially more localized thermal energy during heavy read/write operations than the idle memory cells, a high-temperature thermal gradient propagates outward from the controller. This proximity causes the controller to directly increase heat in that specific adjacent NAND component (NAND Package 1) via conductive heat transfer through the shared internal copper ground planes of the PCB substrate and the overlying heat spreading material, thereby matching the recited structural and thermal behavior.

195.    Claim 16 of the '716 patent recites the apparatus of claim 7, wherein the first and second non-volatile memory components are electrically coupled to one or more memory buses in parallel.

196.    On information and belief, Defendant's NV5000 M.2 PCIe 4.0 SSD product satisfies this limitation because its internal wiring topology connects its multiple memory chips to parallel physical buses. Specifically, the integrated Realtek RTS5772DL SSD controller is an 8-channel architecture, where each individual flash channel constitutes an independent, physical memory bus running concurrently. The first non-volatile NAND package and the second non-volatile NAND package are surface-mounted and electrically coupled across these multiple internal controller channels. By interleaving data signals simultaneously across these separate lines, the controller communicates with the first and second non-volatile memory components concurrently over distinct memory buses operating in parallel, matching the recited structural and electrical configuration.

197.    Claim 17 of the '716 patent recites the apparatus of claim 7, wherein the one or more temperature dependent management functions comprise managing a frequency of garbage collection operations on the first non-volatile memory component and the second non-volatile memory component.

198.    On information and belief, Defendant's NV5000 M.2 PCIe 4.0 SSD product satisfies this limitation because its master controller firmware is configured to modulate background maintenance cycles based on real-time thermal telemetry. Specifically, the Flash Translation Layer (FTL) firmware of the internal SSD controller continuously runs "Garbage Collection" operations to relocate valid data blocks and erase stale pages across the storage matrix. Because active block erasures and page rewrites generate significant localized thermal loads, the

controller's thermal management loop actively throttles, defers, or adjusts the frequency of garbage collection operations concurrently across the separate first and second non-volatile NAND packages when thermal sensors flag that specific component zones have exceeded safe operating thresholds, thereby matching the recited behavior.

199.    Claim 18 of the '716 patent recites the apparatus of claim 7, wherein the one or more temperature dependent management functions comprise determining read voltage levels for the first non-volatile memory component and the second non-volatile memory component.

200.    On information and belief, Defendant's NV5000 M.2 PCIe 4.0 SSD product satisfies this limitation because its master controller firmware is configured to dynamically calculate, adjust, and determine read voltage levels based on operational temperature shifts. Specifically, the threshold voltage characteristics of the memory cells within the first and second non-volatile NAND packages shift physically as a function of temperature (cross-temperature effects). To prevent data corruption and uncorrectable bit errors, the internal SSD controller's Flash Translation Layer (FTL) firmware utilizes real-time thermal telemetry to dynamically determine and apply optimized read reference voltage offsets. Because the controller determines these tailored read voltage levels concurrently for the distinct channels routing to the first and second non-volatile memory components based on their localized thermal zones, it executes temperature-dependent management functions that comprise determining read voltage levels.

201.    Other exemplary '716 Accused Products include: TEAMGROUP MP44 M.2 PCIe 4.0 SSD; TEAMGROUP MP44L M.2 PCIe 4.0 SSD; TEAMGROUP MP44Q M.2 PCIe 4.0 SSD; TEAMGROUP NV5000 M.2 PCIe 4.0 SSD; T-FORCE G70 Pro PCIe 4.0 SSD; T-FORCE G70 PCIe 4.0 SSD; T-FORCE G50 Pro PCIe 4.0 SSD; T-FORCE G50 PCIe 4.0 SSD; T-FORCE GA PRO M.2 PCIe 5.0 SSD; T-FORCE GE PRO M.2 PCIe 5.0 SSD; T-FORCE CARDEA Zero Z440

PCIe 4.0 SSD; T-FORCE CARDEA Zero Z340 PCIe 3.0 SSD; and T-FORCE CARDEA Zero Z330 PCIe 3.0 SSD.

202. Defendant has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least claims 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, and 18 of the '716 patent pursuant to 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States, without Palisade's authorization, the '716 Accused Products, which constitute apparatuses that satisfy each and every limitation of at least claims 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, and 18.

203. Since at least the filing of this Complaint, Defendant has had knowledge of the '716 patent. Since at least that time, Defendant has indirectly infringed and continues to indirectly infringe at least claims 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, and 18 of the '716 patent pursuant to 35 U.S.C. § 271(b) by actively inducing others—including its e-commerce partners, retail distributors, and end-users—to directly infringe the '716 patent. Defendant does so with knowledge of the '716 patent and with the specific intent to cause direct infringement by purposefully providing hardware specifications, firmware configuration utilities, and thermal optimization guides that instruct and encourage third parties to mount, manage, and run the '716 Accused Products in a manner that satisfies each and every limitation of at least claims 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, and 18.

204. As a result of Defendant's infringement of the '716 patent, Plaintiff Palisade has suffered and will continue to suffer severe damages. Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to recover damages from Defendant adequate to compensate for the infringement, in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a) A judgment that Defendant has infringed and is infringing one or more claims of the Asserted Patents, literally and/or under the doctrine of equivalents;

b) A judgment that since the first notice of infringement to Defendant, one or more claims of the Asserted Patents have been willfully infringed, literally and/or under the doctrine of equivalents, by Defendant;

c) A judgment that Defendant account for and pay to Plaintiff all damages and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, including an accounting for any sales or damages not presented at trial;

d) A judgment that Defendant account for and pay to Plaintiff a reasonable, ongoing, post-judgment royalty because of Defendant's infringing activities, including continuing infringing activities, and other conduct complained of herein;

e) A judgment that Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f) A judgment that this case is exceptional under the provisions of 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorneys' fees;

g) A judgment awarding Plaintiff damages adequate to compensate for Defendant's infringement of the Asserted Patents pursuant to 35 U.S.C. § 284, including but not limited to lost profits and/or a reasonable royalty;

h) A judgment awarding Plaintiff enhanced damages pursuant to 35 U.S.C. § 284 based on Defendant's willful infringement;

i) Such other and further relief as the Court deems just and equitable.

Dated: July 13, 2026

Respectfully submitted,

/s/ *Patrick J. Conroy*
Patrick J. Conroy
Texas Bar No. 24012448
Jonathan H. Rastegar
Texas Bar No. 24064043
NELSON BUMGARDNER CONROY PC
2727 N. Harwood St., Suite 250
Dallas, Texas 75201
Tel: (214) 446-4950
pat@nelbum.com
jon@nelbum.com

David A. Gerasimow
Texas Bar No. 24134024
Colin J. Stalter
Illinois Bar No. 6333401
(*pro hac vice* forthcoming)
THE LAW OFFICES OF DAVID A. GERASIMOW, P.C.
701 Commerce St., Suite 611
Dallas, Texas 75202
Tel: (312) 620-4442
dave@gerasimowlaw.com
colin@gerasimowlaw.com

Attorneys for Plaintiff
Palisade Technologies, LLP